UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV-08 5026**

- - - - - - - - - - - - - - - - - - - - - - - -

IRWIN KELLNER, on behalf of himself and on behalf
of all others similarly situated,

                     Plaintiff,

     -against-

BERNARD L. MADOFF, BERNARD L. MADOFF
INVESTMENT SECURITIES LLC, and JOHN DOES
1-100 Consisting of Individuals, Corporations,
Partnerships and Entities To Be Determined,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - -x

**CLASS ACTION
COMPLAINT**

Civil Action No.

**JURY TRIAL DEMANDED**

SPATT, J.

**FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.**

TOMLINSON, M    DEC 1 2 2008    ★

LONG ISLAND OFFICE

        Plaintiff Irwin Kellner on behalf of himself and on behalf of all others similarly

situated, as and for his complaint against defendants Bernard L. Madoff ("Madoff"),

Bernard L. Madoff Investment Securities LLC ("BMIS") and John Does 1-100 consisting

of individuals, corporation, partnerships and entities to be determined (collectively, along

with Madoff and BMIS, "Defendants"), alleges upon personal knowledge as to himself

and his own acts, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

        1.     This case arises from one of the most damaging Ponzi schemes in the

history of Wall Street and the United States, a massive fraud through which individual

defendant Madoff and his accomplices swindled investors out of monies estimated to

exceed $50 billion. Plaintiff's claims include fraud based on misrepresentations in

connection with the sale of securities in violation of the Securities and Exchange Act of

Dockets.Justia.com

1934, violation of the Racketeer Influenced and Corrupt Organizations Act, and related state and common law charges.

2.     According to news reports, shortly before his stunning arrest, defendant Madoff admitted that BMIS is insolvent and has been for years, and has publicly admitted that losses from this fraud are at least $50 billion.

3.     Upon information and belief, at all relevant times defendant Madoff's fraudulent conduct was concealed from plaintiffs – who believed that they were actually purchasing legitimate securities from an enterprise engaged in lawful business activities. On the basis of the giant Ponzi scheme that lies at the heart of this case, plaintiffs allege violations of the securities laws and related federal laws, as well as claims of fraud, fraudulent misrepresentation, negligent misrepresentation, breach of contract, conversion, unjust enrichment, fraudulent conveyance and breach of fiduciary duty.

## JURISDICTION AND VENUE

4.     Jurisdiction of this Court is pursuant to § 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 788 *et seq.*; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et. seq.*; and § 1331 of Title 28 of the U.S. Code. The Court has jurisdiction over the common law claims alleged herein pursuant to principles of supplemental jurisdiction, 28 U.S.C. § 1367(a).

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because upon information and belief, individual defendant Bernard L. Madoff resides in the Town of East Hampton, New York. Further, a substantial part of the events giving rise to this claim, including

solicitation of many individuals who became victims of Defendants' Ponzi scheme, occurred in the Eastern District of New York.

## PARTIES

6.     Plaintiff Irwin Kellner is an individual residing at 40 Angler Lane, Port Washington, New York.

7.     Defendant Bernard L. Madoff ("Madoff") is a resident of Suffolk County, New York, with a residence located in the Town of East Hampton, New York.

8.     Madoff is the owner of defendant Bernard L. Madoff Investment Securities LLC ("BMIS"), a New York Limited Liability Company that maintains its principal place of business within the district at 885 Third Avenue, New York, New York.

9.     John Does "1" through "100" consist of individuals, corporations, partnerships and entities to be determined, each of whom is believed to have violated Plaintiffs' rights; and to have aided, abetted and conspired to violate Plaintiffs' rights; or is the successor in interest to one or more of Defendants, the identities of which will be determined through discovery in this matter.

## FACTS

10.     Upon information and belief, Madoff is an attorney who founded BMIS in the early 1960s.

11.     Upon information and belief, Madoff is a former Chairman of the board of directors of the NASDAQ stock market.

12.     Upon information and belief, BMIS is both a broker-dealer and investment advisor registered with the Securities and Exchange Commission ("SEC"). BMIS engaged in three different operations, namely investment advisor services, market making services and proprietary trading.

13.     Upon information and belief, Madoff oversees and controls the investment advisor services at BMIS as well as the overall finances of BMIS.

14.     Upon information and belief, the most recent filings by BMIS with the SEC in January 2008 listed BMIS as having over $17 billion in assets under management.

15.     BMIS' website states that it has been "providing quality executions for broker-dealers, banks and financial institutions since its inception in 1960"; and that BMIS, "[w]ith more than $700 million in firm capital[,] currently ranks among the top 1% of US Securities firms."

16.     Upon information and belief, Madoff conducts certain investment advisory business for clients that is separate from the BMIS' proprietary trading and market making activities.

17.     In truth and in fact, unbeknownst to plaintiffs, upon information and belief at all relevant times, Madoff and BMIS have been conducting a Ponzi-scheme through the investment advisor services of BMIS, and through their scheme have defrauded investors out of monies estimated to exceed $50 billion.

18.     Upon information and belief, Madoff ran his investment advisor business from a separate floor in the offices of BMIS, Madoff kept the financial statement for the

firm under lock and key, and was "cryptic" about the firm's investment advisory business when discussing the business with other employees of BMIS.

19.    Upon information and belief, in or about the first week of December, Madoff told a senior employee that there had been requests from clients for approximately $7 billion in redemptions, and that Madoff was struggling to obtain the liquidity necessary to meet those obligations.

20.    Upon information and belief, on or about December 9, 2008, Madoff informed another senior employee that he wanted to pay bonuses to employees of the firm in December, which was earlier than employee bonuses are usually paid.

21.    Upon information and belief, also during December 2008 in a meeting with one of his senior employees, Madoff stated that his investment advisory business was a fraud, that "it's all just one big lie," and that it was "basically, a giant Ponzi scheme."

22.    Upon information and belief, Madoff further communicated to his senior employees that he had for years been paying returns to certain investors out of the principal received from other, different, investors. Upon information and belief, Madoff further stated that the business was insolvent, and that it had been for years, and he estimated the losses from this fraud to be at least approximately $50 billion.

23.    Upon information and belief, on or about December 9, 2008, Madoff also informed his senior employees that he planned to surrender to the authorities, but before he did that, he had approximately $200-300 million left, and he planned to use that money to make payments to certain selected employees, family and friends.

24.     The plaintiff class, as defined and alleged further hereinbelow, is believed to have lost $50 billion dollars, all as a result of Defendants' knowing deception, through which members of the plaintiff class were deceived into investing in a fraudulent Ponzi scheme.

## CLASS REPRESENTATIVE CLAIMS

25.     Plaintiff Kellner individually entrusted monies to BMIS for investment on his behalf based upon materially false and misleading information disseminated by Defendants, to the effect that BMIS was a legitimate enterprise engaged in the lawful brokerage and sale of investment securities, when in truth BMIS was a fraudulent Ponzi scheme predicated upon the satisfaction of interest and dividend commitments through the distribution of investor principal.

26.     Plaintiff Kellner first entrusted monies to BMIS in or about December 1998, in the amount of $1,248,838, ostensibly for establishment of an Individual Retirement Account ("IRA"), to be supervised and controlled by BMIS.

27.     At the time plaintiff Kellner first invested funds with BMIS, defendant Madoff acting through BMIS falsely misrepresented that BMIS was a legitimate enterprise operating as a lawful broker and dealer, when in truth and in fact BMIS was a fraudulent Ponzi scheme, which could remain solvent only by paying out interest and dividend commitments through the distribution of investor principal.

28.     Upon information and belief, when defendant Madoff acting through BMIS misrepresented the nature of BMIS, defendant Madoff did so deliberately and with the

intention of inducing plaintiff Kellner to invest monies with BMIS, and so as to conceal Defendants' Ponzi scheme.

29. Plaintiff Kellner naturally, reasonably, and justifiably relied upon Defendants' misrepresentations concerning the nature of BMIS, in determining to invest plaintiff Kellner's monies with BMIS.

30. Plaintiff Kellner later entrusted additional monies to BMIS in the additional amount of $1,000,000 in or about April 2000, for establishment of an ordinary investment account, to be supervised and controlled by BMIS.

31. In determining to invest additional monies in BMIS in April 2000, plaintiff Kellner again acted based upon false and materially misleading statements, by defendants Madoffs and BMIS, to the effect that BMIS was a legitimate enterprise engaged in lawful broker dealer operations.

32. And just as in December 1998, in determining to invest further monies in April 2000, plaintiff Kellner naturally, reasonably, and justifiably relied upon Defendants' misrepresentations concerning the nature of BMIS, in determining to make such investment.

33. At all relevant times, in or about each month between January 1989 and December 2008, plaintiff Kellner received account statements from BMIS, delivered to plaintiff Kellner's home in Port Washington, New York (the "Monthly Account Statements").

34.  The Monthly Account Statements were delivered to plaintiff Kellner via the United States Mail.

35.  The Monthly Account Statements contained materially false statements, and were an integral part of Defendants' overall scheme to defraud, insofar as the Monthly Account Statements implicitly and explicitly created the false and misleading impression that BMIS was a legitimate enterprise engaged in lawful broker dealer operations, and thus acted to conceal the fact that BMIS in truth and in fact was actually a fraudlent Ponzi scheme, which could remain solvent only by paying out interest and dividend commitments through the distribution of investor principal.

36.  As a consequence of Defendants' fraud as alleged here, plaintiff Kellner has been damaged in an amount to be proven at trial and estimated to exceed $3 million.

## CLASS ACTION ALLEGATIONS

37.  Plaintiffs bring this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following:

a.  All persons and entities who purchased securities sold by or through defendants Madoff or BMIS, or other selling agents affiliated with Madoff or BMIS, from as early as the formation of BMIS in the 1960's until December 12, 2008 inclusive (the "Class Period"), excluding Defendants, all officers and directors of Defendants during the Class Period, the immediate family of the Individual Defendants and any BMIS subsidiary (the "Class").

b. Excluded from the Class are: (1) all persons or entities whose claims against Defendants with respect to securities purchased and invested by that person have been finally adjudicated, individually or on a class wide basis, in litigation or arbitration, before any court or arbitration tribunal; and, (2) all persons or entities who have entered into valid releases with the Defendants covering all of the wrongs alleged in this Complaint. To the extent that any person has not had all of his claims with respect to securities purchased and invested in finally adjudicated or finally released, the Class includes said person(s), but only to the extent of unadjudicated and/or unreleased claims arising from damages suffered as a result of an investment in any of the Investments.

c. Also excluded from the Class are Defendants, members of the immediate family of any Defendant, and their legal representatives, heirs, successors or assigns.

d. The Class satisfies the requirements of Rule 23(a) and 23(b)(3) Federal Rules of Civil Procedure:

e. *Numerosity.* During the Class Period, numerous different securities were sold to thousands. The number of the Class members is estimated to be in the thousands.

f. *Typicality.* The losses to the plaintiffs were caused by the same events and courses of conduct that give rise to the claims of the other members of the Class.

g.     *Common Questions.* Among the questions of law and fact common to the Class are: (a) whether Defendants violated the Securities and Exchange Act of 1934, § 788 *et seq.* of Title 15 of the U.S. Code, (b) whether Defendants violated RICO, §§ 1962(a), 1962(c) and 1962(d), (c) whether Defendants fraudulently concealed the corrupt practices outlined in this Complaint from the Class, (d) whether Defendants have breached their fiduciary duties to the Class, (e) whether Defendants are liable for common law fraud for misrepresentations made to the Class, (f) whether the Defendants engaged in a pattern or practice to tout their securities, regardless of the suitability of such investments, including whether such investment caused over-concentration in the portfolios of Plaintiffs and the Class, (f) whether Defendants conspired to commit any of the wrongs and violations alleged in this Complaint, and (g) whether the members of the Class have sustained damages as a result of Defendants' conduct and, if so, the proper measure of damages.

h.     *Adequate Representation.* The representative Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained experienced counsel qualified in class action litigation that is competent to assert the Class's interests.

i.     *Superiority.* A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual damages to any one investor may be relatively small, making the expense of non-class litigation prohibitive or impractical for Class members. Moreover, in light of the disclosures of the SEC investigation and pending criminal charges, additional lawsuits are likely to be filed. An

overall resolution, fairly apportioned among all Defendants, is preferable to the result of inconsistent litigations dealing with individual investors.

## FIRST CLAIM FOR RELIEF
## (RICO 18 U.S.C. § 1962)

38.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

39.     Defendants Madoff, BMIS and currently unknown additional individuals and entities who were parties to the fraud perpetrated by Defendants are each a "person" within the meaning of 18 U.S.C. § 1961(3).

40.     Defendants Madoff, BMIS and currently unknown additional individuals and entities and the association-in-fact amongst them constitute "enterprises" within the meaning of 18 U.S.C. § 1961(4), which are engaged in, or the activities of which affect or affected, interstate commerce.

41.     Upon information and belief, since at least as early as the 1960's, defendant Madoff has engaged in an ongoing scheme to defraud the public, profit from the fraudulent sale of securities, and to intentionally injure Plaintiffs financially.

42.     In carrying out this scheme, defendant Madoff operated the affairs of defendant BMIS and the association-in-fact of Defendants by and through a "pattern of racketeering activity," within the meaning of 18 U.S.C. § 1961(1)(B) and (5) and in violation of 18 U.S.C. § 1962(c), including acts indictable under 18 U.S.C. § 1341,

11

commonly known as the "mail fraud statute," 18 U.S.C. § 1343, commonly known as the "wire fraud statute."

43.    Madoff participated in the affairs of the enterprise by performing functions necessary or helpful to the enterprise's operation and affairs in raising millions of dollars in investment capital from thousands of investors in the offering of the securities, including through the regular distribution of Monthly Account Statements. The investment capital was raised through the fraudulent course of conduct described above, including the acts of racketeering within the meaning of 18 U.S.C. §§ 1961(1) (B) and (D).

44.    Defendants engaged in the pattern of racketeering activity described herein with the knowledge that potential purchasers would be defrauded, that the interstate mails and wires would be utilized in furtherance of the racketeering enterprises identified herein, in violation of 18 U.S.C. §§ 1341 and 1343, and with knowledge that such mail fraud and illegal utilization of the interstate wires was essential to further their fraudulent scheme.

45.    In violation of 18 U.S.C. § 2, Madoff aided and abetted the violations of the RICO statute alleged herein as well as the primary acts of mail fraud, wire fraud and fraud in the offer or sale of securities alleged herein.

46.    The described acts of racketeering occurred after the effective date of the RICO statute and within ten years of each other

47.    As a direct and proximate result of the RICO violations described herein, Plaintiffs and other members of the Class have been injured in their business and/or property by reason of losses of substantial portions of the money as a result in the purchasing of securities marketed by and through Defendants. Plaintiffs and the Class relied on Madoff's misrepresentations and omissions with respect to the securities purchased by Plaintiffs and the Class and, but for those misrepresentations and omissions, Plaintiffs and the Class would not have purchased the securities.

48.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs and the Class are entitled to recover treble damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Violations of 18 U.S.C. §§ 1962(a) and (d))

49.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

50.    This claim for relief arises under 18 U.S.C. §§ 1962(a) and (d) of RICO.

51.    Plaintiffs and the Class are "persons" as defined in 18 U.S.C. § 1961(3).

52.    Madoff is a "person" as that term is defined in 18 U.S.C. § 1961(3).

53.    Each of the securities in which Plaintiffs and the Class were induced to invest pursuant to the scheme alleged in detail above constituted an enterprise engaged in interstate commerce within the meaning of 18 U.S.C. § 1961(4).

54.    As more fully alleged above, Madoff has engaged in a pattern of unlawful acts including, but not limited to, the issuance, transmission through the United States

mails and filing of false and misleading Monthly Account Statements, sales documents, reports, releases, financial statements, prospectuses, confirmation letters and telephone calls and has utilized and directed its agents to utilize materially false and misleading scripts and descriptions in telephone calls, wire communications and personal conversations with Plaintiffs and the Class, constituting multiple acts of mail fraud, wire fraud and fraud in the offer and sale of securities. In violation of 18 U.S.C. § 2, Madoff, together with BMIS and currently unknown additional individuals and entities aided and abetted violations of the RICO statute as more fully alleged above as well as the primary acts of mail fraud, wire fraud and fraud in the offer or sale of securities by Defendants. The aforementioned activities constitute "racketeering activity" as that term is defined in 18 U.S.C. § 1961 of RICO. Each such act of racketeering activity had similar purposes, involved the same or similar participants and methods of commission and had similar results impacting upon similar victims, namely Plaintiffs and the Class, and thus constituted a "pattern of racketeering activity" as that term is defined in 18 U.S.C. § 1961(5) of RICO.

55.      In violation of 18 U.S.C. § 1962(d), Madoff agreed with BMIS and the currently unknown additional individuals and entities to enter into a conspiracy to derive and did, in fact, derive substantial proceeds through the above described pattern of racketeering activity, and conspired to use and invest and, in fact, used or invested such racketeering proceeds in the operation of the enterprises in which Plaintiffs and the Class

invested in a manner that wrongfully diluted the ownership interest of Plaintiffs and the Class and otherwise injured Plaintiffs and the Class as alleged above.

56.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs and the Class are entitled to recover treble damages in amounts to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Violations of § 10(b) of the Exchange Act and of Rule 10b-5)

57.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

58.     As more fully set forth in the factual allegations above, Defendants, through the use of the mails and the means and instrumentalities of interstate commerce fraudulently induced Plaintiffs and the Class to purchase investments, being marketed by Madoff and BMIS through the use of materially false and misleading Monthly Account Statements, sales materials and oral presentations.

59.     Defendants knowingly transmitted to Plaintiffs and the Class and disseminated, directly and through its agents, materially false and misleading statements, as more fully described above, describing and recommending the purchase of the securities purchased by Plaintiffs and the Class.

60.     At the time of the misstatements and omissions described above, Defendants knew or should have known that such statements were materially false and misleading and omitted facts required in order to make the statements made, in light of the circumstances under which they were made, not misleading, but knowingly or

15

recklessly made such statements to Plaintiffs and the Class in order to induce them to purchase the investments.

61.    Plaintiffs and the Class reasonably relied upon the information provided to them and statements made by Madoff, BMIS and its agents recommending the purchase of the securities.  At the time of such investments, Plaintiffs and the Class had no knowledge that the information and recommendations provided by Defendants contained material misstatements and omissions.

62.    Plaintiffs and the Class would not have purchased the securities but for the materially false and misleading information provided to them by Defendants.

63.    As a result of their investments, Plaintiffs and the Class have been damaged and their original investment capital has been substantially depleted.

## FOURTH CLAIM FOR RELIEF
### (Violations of Section 12 of the Securities Act)

64.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

65.    Defendants sold the securities to Plaintiffs by means of oral and written communication which contained material misstatements and/or omissions and was disseminated by use of the means and instruments of transportation or communication in interstate commerce or of the mails.

66.    Plaintiffs and the Class, without knowledge of the falsity of the Defendants' statements and of the material omissions in the written materials provided by Defendants

including, but not limited to, Monthly Account Statements and other misrepresentations made by the Defendants, as described above, and reasonably believing such statements to be true and complete, purchased investments from Defendants.

67.    Plaintiffs and the Class would not have purchased the investments but for the materially false and misleading information provided to them by Defendants.

68.    By virtue of the foregoing, Plaintiffs and the Class have been damaged and are entitled to damages and other relief for the Defendants' violations of Section 12 of the Securities Act as alleged herein.

### FIFTH CLAIM FOR RELIEF
### (Fraud)

69.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

70.    Plaintiffs and the Class, without knowledge of the falsity of the Defendants' statements and of the material omissions described above, and believing such statements to be true and complete, and in reasonable and justifiable reliance upon the statements and representations made by the Defendants, as previously set forth herein, purchased investments in reliance upon the truth and completeness of the statements contained in the written materials including the Monthly Account Statements, and other representations made by the Defendants. Plaintiffs and the Class would not have purchased their investments except for their reliance upon the representations made by the Defendants in offering such investments for sale.

71.     At the time the statements and representations were made by the Defendants, they were false, the Defendants knew them to be false and they intended to deceive Plaintiffs and the Class by making such statements and representations.

72.     At the time of the false statements, misrepresentations and omissions, set forth above, each of the Defendants intended that Class members, including Plaintiffs, act on the basis of the misrepresentations and omissions contained in the materials and representations in deciding whether to purchase the investments and Plaintiffs and the Class members reasonably relied thereon to their detriment in making such decisions.

73.     All the wrongful acts of the Defendants set forth herein are incorporated by reference. Each wrongful act alleged constitutes a separate injury suffered by Plaintiffs and the Class.

74.     Had Plaintiffs and the Class known of the material facts which the Defendants wrongfully concealed and misrepresented, and the falsity of the Defendants' representations, Plaintiffs and the Class would not have made any such purchases.

75.     Plaintiffs and the Class, as a result of their purchases and by reason of the Defendants' wrongful concealments and misrepresentations, have sustained damages, suffered mental and emotional distress and have lost a substantial part of their respective investments, together with lost interest and general and incidental damages in an amount yet to be determined, and to be proven at trial.

76.     By reason of the foregoing, the Defendants are jointly and severally liable to Plaintiffs and the Class members.

77. In addition, the Defendants' fraudulent acts were willful, wanton and aimed at the public generally. Therefore, Plaintiffs and the Class are entitled to punitive damages.

## SIXTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

78. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

79. The Defendants owed to Plaintiffs and the Class a duty: (a) to act with reasonable care in preparing and disseminating the information set forth in written materials including the Monthly Account Statements, and other representations relied upon by Plaintiffs and the Class in deciding to purchase the investments; and (b) to use reasonable diligence in determining the accuracy of and preparing the information contained therein.

80. The Defendants breached their duty to Plaintiffs and the Class by failing to investigate, confirm, prepare and review with reasonable care the information contained in the written materials and other representations and by failing to disclose to Plaintiffs and the Class, among other things, the facts alleged above, and in failing to correct the misstatements, omissions and inaccuracies contained therein.

81. As a direct, foreseeable and proximate result of this negligence, Plaintiffs and the Class have sustained damages, suffered mental and emotional distress and have

lost a substantial part of their respective investments, together with lost interest, general and incidental damages in an amount yet to be determined, and to be proven at trial.

82.     By reason of the foregoing, the Defendants are jointly and severally liable to Plaintiffs and the Class.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

83.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

84.     Defendants breached their fiduciary duties to the Plaintiffs and the Class.

85.     The duties expressly assumed by the Defendants and owed to the Plaintiffs and the Class include, *inter alia:*

a.  The duty to act with reasonable care to ascertain that the information set forth in the written materials, including the Monthly Account Statements, and other presentations communicated to and relied upon by Plaintiffs and the Class in deciding to purchase the Investments was accurate and did not contain misleading statements or omissions of material facts.

b.  The duty to allow individual representatives selling the investments to act with reasonable care to ascertain that the investment opportunity presented to Plaintiffs and the Class was suitable and in accordance with their investment goals and intentions by providing to such representatives truthful sales information concerning such investments.

c. The duty to deal fairly and honestly with Plaintiffs and the Class.

d. The duty to avoid placing itself, himself or themselves in situations involving a conflict of interest with Plaintiffs and the members of the Class.

e. The duty to manage the accounts of Plaintiffs and the members of the Class and to manage and operate the Investments exclusively for the best interest of the Plaintiffs and the members of the Class.

f. The duty to make recommendations and execute transactions in accordance with the goals, investment objectives, permissible degree of risk and instructions of Plaintiffs and the members of the Class.

86. The Defendants failed to fulfill their fiduciary duties owed to Plaintiffs and the members of the Class in the following respects:

a. Failing to act with reasonable care to ensure that the information set forth in the written materials and other presentations communicated to and relied upon by Plaintiffs and the other members of the Class in deciding to purchase the investments was accurate and did not contain misleading statements or omissions of material facts.

b. Failing to act with reasonable care to provide truthful sales information to representatives agents to ensure that the investment opportunity presented to Plaintiffs and the Class was suitable and in accordance with their investment goals and intentions.

c. Engaging in transactions which resulted in a conflict of interest between the Defendants and Plaintiffs and the Class whose financial interests the Defendants had undertaken to advance, supervise, manage and protect.

d. Failing to adequately and fully disclose to Plaintiffs and the Class the full extent and nature of the conflicts of interest in which the Defendants and their affiliates would be engaging.

e. Profiting and allowing all Defendants and their affiliates to profit at the expense of Plaintiffs and the Class.

f. Engaging in transactions that were designed to and did result in a profit to all Defendants and their affiliates at the expense of Plaintiffs and the Class.

87.     The acts of the Defendants in breaching their fiduciary obligations owed to Plaintiffs and the members of the Class show a willful indifference to the rights of Plaintiffs and the other members of the Class.

88.     As a proximate result of the Defendants' breaches of their fiduciary duties, Plaintiffs and the other Class members have sustained damages, suffered mental and emotional distress, and have lost a substantial part of their respective investments, together with lost interest and general and incidental damages in an amount yet to be determined, and to be proven at trial.

89.     By reason of the foregoing, the Defendants are jointly and severally liable to Plaintiffs and the other Class members.

90.     In addition, the Defendants' acts were willful and wanton and aimed at the public generally. Therefore, Plaintiffs and the Class are entitled to punitive damages.

## EIGHTH CLAIM FOR RELIEF
### (Violations of General Business Law § 349)

91.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

92.    Defendants' acts and conduct in furtherance of their scheme or artifice constitute deceptive acts and practices in the conduct of a business or in the furnishing of a service, within the meaning of section 349 of the New York General Business Law and, as such, are unlawful.

93.    Upon information and belief, the same acts and conduct used by Defendants to defraud Plaintiffs have been used repeatedly and are of a recurring nature.

94.    The acts and conduct of Defendants, by which they knowingly fraudulently represented to potential purchasers the fraudulent nature of the investments that Defendants were selling to Plaintiffs, affect the public interest.

95.    As a result of Defendants unlawful acts and conduct in violation of section 349 of the New York General Business Law, Plaintiffs have been damaged in an amount to be proven at trial and now estimated to exceed of $50 billion.

## NINTH CLAIM FOR RELIEF
### (Violations of General Business Law § 350)

96.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

97.    The false representations by Defendants concerning the true nature of the investments being sold by Defendants to Plaintiffs, including those made in the Monthly

Account Statements, constitute false advertising within the meaning of sections 350 and 350-a of the New York General Business Law and, as such, are unlawful.

98. As a result of Defendants' false advertising, Plaintiffs have been injured within the meaning of section 350-e of the New York General Business Law, and are entitled to damages in an amount to be proven at trial and now estimated to exceed $50 billion.

## TENTH CLAIM FOR RELIEF
### (Conversion)

99. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

100. Plaintiffs are the rightful owner of monies paid to the Defendants for securities sold under false pretenses.

101. Plaintiffs' interest in these monies is superior to any interest the Defendants have in these monies.

102. In unlawfully taking Plaintiffs' monies and controlling and expending the funds for their own purposes, Defendants have converted funds belonging to Plaintiffs.

103. Defendants have intentionally exercised dominion and control over such funds in a manner inconsistent with and in willful disregard of Plaintiffs' interest.

104. As a result of the conversion, Plaintiffs have been damaged in an amount to be determined at trial.

105.  In converting these monies, Defendants acted wantonly, willfully, and in knowing and reckless disregard of the rights of Plaintiffs. Accordingly, an award of punitive damages is appropriate and in the public interest.

## ELEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

106.  Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

107.  Defendants received money or property belonging to or provided by the Plaintiffs.

108.  Defendants benefited from the receipt of the money.

109.  Under principles of equity and good conscience, Defendants should be required to pay back Plaintiffs the amount of the unjust enrichment.

## TWELVTH CLAIM FOR RELIEF
### (NY Debtor and Creditor Law Section 273)

110.  Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

111.  Defendants incurred or caused to be incurred obligations without fair consideration rendering themselves insolvent.

112.  These obligations include the various amounts owed to Plaintiffs as a result of their investments.

113.  As a result of the foregoing, Defendants owe substantial sums to the Plaintiffs in an amount to be determined at trial.

## THIRTEENTH CLAIM FOR RELIEF
### (NY Debtor and Creditor Law Section 274)

114. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

115. Defendants made conveyances without fair consideration leaving remaining property to constitute an unreasonably small capital.

116. Such conveyances included various improper payouts to Defendants' employees, family and friends.

117. As a result of the foregoing, Defendants owe substantial sums to the Plaintiffs, in an amount to be determined at trial.

## FOURTEENTH CLAIM FOR RELIEF
### (NY Debtor and Creditor Law Section 275)

118. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

119. Defendants made conveyances without fair consideration intending or believing that they would incur debts beyond their ability to pay as they matured.

120. Such conveyances included various improper payouts to Defendants' employees, family and friends.

121. As a result of the foregoing, Defendants owe substantial sums to the Plaintiffs, in an amount to be determined at trial.

## FIFTEENTH CLAIM FOR RELIEF
### (NY Debtor and Creditor Law Section 276)

122. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if set forth fully hereat.

123. Defendants made conveyances and incurred obligations with actual intent to hinder, delay or defraud either present or future creditors.

124. Such conveyances included various improper payouts to Defendants' employees, family and friends.

125. As a result of the foregoing, Defendants owe substantial sums to the Plaintiffs, in an amount to be determined at trial.

## PLAINTIFFS DEMAND TRIAL BY JURY

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, request the following procedural orders and demands judgment against Defendants, equitable relief and damages, as follows:

1. An order certifying the proposed class of investors, together with any necessary or appropriate subclasses, under Federal Rules of Civil Procedure Rule 23 and appointing Plaintiffs and their counsel to represent the Class;

2. Compensatory damages in an amount estimated to exceed $50 billion;

3. Consequential damages in an amount to be determined at trial;

4. Treble damages for Defendants' civil RICO violations of 18 U.S.C. §§ 1961, *et seq.;*

5. General damages for all injuries resulting from the negligence, fraud, breaches of contract and breaches of fiduciary duty committed by the Defendants in an amount to be ascertained at trial;

6. Disgorgement and restitution of all earnings, profits, compensation and benefits received by Defendants as a result of their unlawful acts and practices;

7. Costs and disbursements of the action;

8. Reasonable attorneys' fees; and

9. Such other and further relief as this Court may deem just and proper.

Dated:    Uniondale, New York
December 12, 2008

RUSKIN MOSCOU FALTISCHEK, P.C.

By: _____

Mark S. Mulholland
Kimberly B. Malerba
Attorney for Plaintiffs
1425 RexCorp Plaza, East Tower
Uniondale, New York 11556
(516) 663-6600

To:    Bernard L. Madoff
Old Montauk Highway
Montauk, New York 11954

Bernard L. Madoff Investment Securities LLC
885 Third Avenue
New York, New York. 10022